**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                              Case No. 17-20067

ALXLEOTOLD GORDON,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Defendant Alxleotold Gordon pleaded guilty to distribution of a controlled substance with a death resulting, 21 U.S.C. § 841(a)(1) and (b)(1)(C), possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1) and (b)(1)(C), possession of firearms in furtherance of a controlled substance distribution offense, 18 U.S.C. § 924(c) and (c)(1)(A)(i), and being a felon in possession of a firearm and ammunition, 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (ECF No. 54, PageID.196-98.) On June 19, 2018, the court sentenced Defendant to 360 months imprisonment. (ECF No. 72, PageID.343.) His expected release date is in August 2042. (ECF No. 113, PageID.567.)

Defendant has filed a *pro se* "Motion for Compassionate Release." (ECF No. 108.) He argues that the risks presented by the Coronavirus Disease ("COVID-19") justify a reduction in his sentence. The government has filed a response. (ECF No. 113.) The court has reviewed the record and finds a hearing not to be necessary. E.D. Mich. L.R. 7.1(f)(2). The court will deny Defendant's motion.

A court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The court must also weigh the sentencing factors provided under 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement[]" with which courts must comply. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 of the Sentencing Guidelines explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." U.S. Sentencing Guidelines Manual § 1B1.13. The category of "Other Reasons" requires a determination from the Director of the Bureau of Prisons ("BOP") that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. *Id.* § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances.[1] Federal Bureau of Prisons, U.S. Department of Justice,

---

[1] After the passage of the First Step Act in 2018, district courts in the Sixth Circuit remain divided over whether only the BOP Director may determine if a defendant's circumstances fall within the category of "Other Reasons." *Compare United States v. Bolze*, --- F. Supp. 3d ----, 2020 WL 2521273, at *7 (E.D. Tenn. May 13, 2020) (quoting U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D)) ("[O]nly the 'Director of the Bureau of Prisons' can determine that such 'other reasons' exist."), *with United States v. Young*, --- F. Supp. 3d ----, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020) ("[F]ederal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.").

*Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)* (2019).

In all, a defendant seeking compassionate release must present "extraordinary and compelling" circumstances, must have § 3553(a)'s sentencing factors that weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one of the four categories in § 1B.13 of the Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A); U.S. Sentencing Guidelines Manual § 1B.13; *United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *2 (E.D. Mich. Jan. 31, 2020) (Leitman, J.) (summarizing compassionate release requirements); *see also United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020).

There are two procedures by which the court may hear motions for compassionate release. First, the BOP can move for compassionate release. 18 U.S.C. § 3582(c)(1)(A). That procedure is not applicable here. The BOP did not move for or endorse Defendant's release.

Second, after the passage of the First Step Act in 2018, Defendant can file a motion on his own. 18 U.S.C. § 3582(c)(1)(A). However, he may do so only "after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of [Defendant's] facility, whichever is earlier." *Id.*

The government does not, as a whole, "contest that [Defendant] has satisfied [the] timing requirements for exhaustion." (ECF No. 113, PageID.573.) As a "mandatory claim-processing rule[]," exhaustion under § 3582(c)(1)(A) applies "only when properly asserted and not forfeited." *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)

3

(citing *Eberhart v. United States*, 546 U.S. 12, 19 (2005)). The court will thus address the merits of Defendant's motion.

However, the government contests exhaustion for the full extent of Plaintiff's alleged "extraordinary and compelling" conditions. 18 U.S.C. § 3582(c)(1)(A). To support his request for compassionate release, Defendant stated to the BOP that he had "[a] compromised immune system . . . (diabetic) etc." (ECF No. 113-2, PageID.584.) However, in his motion, Defendant makes new arguments for release never before presented to the BOP. These include claims that he has vertebrae complications in his neck and back, mental health problems, and family needs.[2] (ECF No. 108, PageID.554.) Plaintiff's motion fails even with his new arguments.

Considering the sentencing factors under 18 U.S.C. § 3553(a), Defendant's early release is not warranted. Title 18 U.S.C. § 3553(a) provides that "[a] court, in determining the particular sentence to be imposed, shall consider[:]"

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

---

[2] Allowing a prisoner to present one description of his circumstances to the BOP and another to the court would undermine the statutory scheme of administrative exhaustion that Congress purposefully designed. It would prevent "the agency [from] address[ing] the issues [in the request] on the merits." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). BOP regulations state that a prisoner must present "[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration." 28 C.F.R. § 571.61(a)(1). If the alleged "extraordinary or compelling circumstances" are not presented, the BOP has not had an opportunity to address them and the prisoner's claim has not been fully exhausted. *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746-47 (6th Cir. 2019) (citing *Woodford*, 548 U.S. at 90-91) (recognizing issue-exhaustion when statutes state "in more general terms . . . 'administrative remedies [must be] exhausted' . . . [and] an agency's rules so require"); *Sims v. Apfel*, 530 U.S. 103, 108 (2000) (finding that an agency regulation requires issue exhaustion when it states that an individual must "list the specific issues to be considered [by the agency]").

4

>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>> (B) to afford adequate deterrence to criminal conduct;
>
>> (C) to protect the public from further crimes of the defendant; and
>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established . . .
>
> (5) any pertinent policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

"[D]istrict courts have 'broad discretion to determine what sentence will serve § 3553(a)'s statutory objectives." *United States v. Kincaid*, 805 F. App'x 394, 394 (6th Cir. 2020) (quoting *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009)) (affirming a district court's denial of compassionate release after consideration of § 3553(a) sentencing factors).

**"[T]he nature and circumstances of the offense and the history and characteristics of the defendant."** 18 U.S.C. § 3553(a)(1). Defendant has a long history of criminal activity. When he was not even twenty, he received his first charge of possession with intent to deliver a controlled substance. (ECF No. 78, PageID.380.) It was reduced to simple possession, but the next year (1992), while on probation, he was charged with delivery of cocaine. (ECF No. 78, PageID.380; ECF No. 54, PageID.211.) He received two years' probation for possession with intent to distribute a controlled

substance. (ECF No. 78, PageID.380; ECF No. 54, PageID.211.) Then, again on probation in 1993, Defendant was convicted of possession with intent to distribute heroin and cocaine. (ECF No. 78, PageID.380; ECF No. 54, PageID.211.) He violated probation a third time in 1996 and was convicted of possession with intent to distribute cocaine. (ECF No. 78, PageID.380; ECF No. 54, PageID.212.)

In 2010, Defendant was convicted of breaking and entering a building. (ECF No. 78, PageID.380; ECF No. 54, PageID.212.) In 2015, he was convicted again of possession of cocaine, and later in 2015, he received a conviction for operating a vehicle while intoxicated. (ECF No. 78, PageID.380-81; ECF No. 54, PageID.212.)

By January 2017, Defendant was back to drug trafficking. On January 20, 2017, he sold heroin laced with fentanyl to a repeat customer, someone who had purchased heroin from Defendant on over 100 previous occasions. (ECF No. 54, PageID.198-99; ECF No. 67, PageID.296.) Instead of consuming the narcotics, the customer (and co-Defendant) delivered the drugs to a third-party. (ECF No. 54, PageID.199; ECF No. 67, PageID.296.) That third-party was found dead by the end of the next day, overdosing due to fentanyl toxicity. (ECF No. 54, PageID.199; ECF No. 67, PageID.296.)

Defendant's original customer was arrested the day after the third-party died. (ECF No. 67, PageID.296.) She was found with heroin purchased from Defendant, which contained fentanyl. (*Id.*) Police conducted a search on Defendant's house January 24, 2017. (ECF No. 54, PageID.199; ECF No. 67, PageID.297.) He was found in possession heroin-fentanyl mixture, packaging materials, two loaded handguns, a magazine with .223 caliber ammunition, and an assault rifle loaded with .223 ammunition. (ECF No. 54, PageID.199; ECF No. 67, PageID.297.) When interviewed by

6

police, Defendant admitted to selling heroin for at least the last eighteen months. (ECF No. 67, PageID.298.) This placed his criminal activity well into the probationary period for his 2015 charges for cocaine possession and operating a vehicle while intoxicated. (ECF No. 78, PageID.380-81; ECF No. 54, PageID.212.)

Defendant has proven himself to be a serial violator of the law, a repeat felon who has, over the course of decades, failed to improve his behavior or establish a law-abiding lifestyle. He has been trafficking dangerous narcotics since he was a young man and, as recently as 2017, caused the death of a drug user through the overpowering strength of a heroin-fentanyl mix. (ECF No. 78, PageID.380-81; ECF No. 54, PageID.198-99, 211-12; ECF No. 67, PageID.296-98.) Defendant possessed powerful and loaded weapons while at the same time consuming highly intoxicating narcotics himself.[3] (ECF No. 67, PageID.297; ECF No. 78, PageID.375, 382.) All this occurred only a few years ago.

The court sentenced Defendant to thirty years' imprisonment. (ECF No. 72, PageID.343.) Even if the court were to consider release with conditions, over the course of his life, Defendant has repeatedly and flagrantly violated court-imposed rules and probation. (ECF No. 78, PageID.380-81; ECF No. 54, PageID.211-12; ECF No. 67, PageID.298.) With over two decades of time left to serve, at a minimum, the court does not find immediate release appropriate or justified. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a)(1).

---

[3] Defendant would "purchase . . . the heroin . . . leave a part of what he purchased for his own personal use [and] then sell to [other] individuals." (ECF No. 78, PageID.374 (Defendant's counsel describing his client's drug addiction prior to arrest).

7

**"[T]he need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."** 18 U.S.C. § 3553(a)(2)(A). Defendant has shown himself unwilling or unable to engage in law-abiding behavior. This is now his sixth controlled substance offense, and his eighth conviction overall. (ECF No. 78, PageID.380-81; ECF No. 54, PageID.211-12.) Despite committing serious crimes and repeatedly receiving terms of probation in lieu of long prison sentences, Defendant has flouted court-imposed conditions and continued his involvement in the world of crime and narcotics trafficking. (ECF No. 78, PageID.380-81; ECF No. 54, PageID.211-12.) Releasing Defendant after his participation in at least one overdose death and his possession of several loaded and illegal firearms, after a sentencing two years ago, would not reflect the seriousness of Defendant's conduct, promote respect for the law, or provide just punishment. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a)(2)(A). (ECF No. 54, PageID.198-99; ECF No. 67, PageID.296-98.)

**"[T]he need for the sentence imposed . . . to afford adequate deterrence to criminal conduct."** 18 U.S.C. § 3553(a)(2)(B). Defendant received sentences for five controlled substance crimes, a breaking and entering, and operating a vehicle while intoxicated. (ECF No. 78, PageID.380-81; ECF No. 54, PageID.211-12.) None of his prior penalties proved effective at divesting Defendant of criminal habits. By 2017, Defendant was possessing firearms, trafficking deadly laced heroin, and causing at least one customer/drug user to overdose and die. (ECF No. 54, PageID.198-99; ECF No. 67, PageID.296-98.) The court finds release only two years after the imposition of a thirty-year sentence to be inadequate to effect proper deterrence, which has been, up to

this point, demonstrably unsuccessful.[4] 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a)(2)(B).

**"[T]he need for the sentence imposed . . . to protect the public from further crimes of the defendant."** 18 U.S.C. § 3553(a)(2)(C). Defendant has a history of committing crimes only to be released into the public to recommit. (ECF No. 78, PageID.380-81; ECF No. 54, PageID.211-12.) He has proven to be a danger to the community; his actions are directly linked to the death of one individual and are likely the cause of substantial harm to many others. (ECF No. 54, PageID.198-99; ECF No. 67, PageID.296-98.) The perils of heroin distribution and illegal firearm possession to society have in no way receded since 2017. Only two years after Defendant's sentencing, the court cannot find that he no longer presents a threat to the health and safety of the public. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a)(2)(C).

**"[T]he sentencing range established."** 18 U.S.C. § 3553(a)(4). Defendant's advisory guideline range was 360 months to life imprisonment. (ECF No. 54, PageID.213; ECF No. 78, PageID.372.) The court ultimately imposed a sentence at the bottom of the guideline range of 360 months imprisonment. (ECF No. 54, PageID.213; ECF No. 78, PageID.372; ECF No. 72, PageID.343.) A reduction in sentence to time

---

4      The court notes that on April 9, 2020 the U.S. Sentencing Commission issued a detailed report on incarceration and recidivism. United States Sentencing Commission, *Length of Incarceration and Recidivism* (2020). Analyzing data on thousands of federal prisoners, the Commission "consistently found that incarceration lengths of more than 120 months had a deterrent effect" while incarceration of sixty months or less had little to no deterrent effect. *Id.* at 4. Given that Defendant was arrested forty-two months ago in January 2017, this study bolsters the court's finding that its original sentence would more likely provide deterrence from further crime, and that the extraordinarily lenient early release as proposed would not. (ECF No. 54, PageID.199; ECF No. 67, PageID.297.)

served a mere two years later is patently inadequate. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a)(4).

**"[T]he need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."** 18 U.S.C. § 3553(a)(2)(D). Defendant argues the risk of contracting COVID-19 justifies his release. He points to the fact he has human immunodeficiency virus ("HIV"), is diabetic, has issues with vertebrae in his neck and back, has mental health problems, and takes several medications. (ECF No. 108, PageID.554.) But it is by no means obvious if and to what extent these facts support Defendant release. Defendant admits that he receives diagnoses and medication for his conditions while at FCI Pekin, the location of his confinement. (*Id.*) Medical records confirm that he receives regular check-ups and monitoring; his HIV is treated, and he remains "asymptomatic (never had an HIV-related illness)." (ECF No. 114, PageID.587, 588-605.) Of special importance, while in prison, Defendant remains sober.

The court has no assurances that this state of affairs would remain in place if Defendant were released. While in free society merely three and a half years ago, he admittedly "ha[d] substantial drug abuse problems," was addicted to heroin, and consistently sold hard drugs out of his place of residence. (ECF No. 78, PageID.375, 382.) He clearly feared for his safety, as do many drug dealers; he possessed several loaded firearms, one being an assault rifle. (ECF No. 67, PageID.297.) If Defendant makes a return to this lifestyle, which the court finds plausible, his mental and physical health would certainly suffer.

The same theme holds true for the risks presented by COVID-19. FCI Pekin has had only one confirmed case of COVID-19, despite overseeing 1,123 inmates. *COVID-19: Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 7, 2020); *FCI Pekin*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/pek/ (last visited Aug. 7, 2020). The BOP has taken actions to mitigate the spread of COVID-19 in the federal prison system. Inmates' internal movement is suspended, subject to narrow exceptions such as medical examinations; newly arriving inmates are screened for exposure risk and symptoms; symptomatic inmates, as well as asymptomatic inmates with exposure risk, are isolated; social visits have been canceled. *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Aug. 7, 2020).

Defendant is from Detroit. If he is released, he may leave an institution with virtually no cases of COVID-19, with extensive precautions to mitigate the spread of the disease, and with regular monitoring and checkups, only to enter a society with tens of thousands of confirmed cases, potentially without access to quality healthcare. *Coronavirus: Michigan Data*, State of Michigan, https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html (last visited Aug. 7, 2020) (detailing COVID-19 cases in Detroit and Wayne County). The court does not find a consideration of Defendant's health and wellness to weigh in favor of immediate release. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a)(2)(D).

In all, having reviewed § 3553(a) sentencing factors and having considered the health risks presented by COVID-19, the court does not find at this time that Defendant's history and circumstances warrant release. Accordingly,

IT IS ORDERED that Defendant's "Motion for Compassionate Release" (ECF No. 108) is DENIED.

                                                       s/Robert H. Cleland            /
                                                       ROBERT H. CLELAND
                                                       UNITED STATES DISTRICT JUDGE

Dated: August 12, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 12, 2020, by electronic and/or ordinary mail.

                                                       s/Lisa Wagner                /
                                                       Case Manager and Deputy Clerk
                                                       (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\17-20067.GORDON.MotionforCompassionateRelease.RMK.docx